This is case number 4-16-0105, People in the State of Illinois v. Sadeq. And for the appellant we have Mr. Munt and Ms. Dorsch for the appellate. You may proceed, counsel. Good afternoon, your honors. My name is Carl Munt. I'm with the Office of the State Appellate Defender. I represent Ibrahim Sadeq in this matter. Your honors, in this case, Trooper Weiss violated Ibrahim Sadeq's Fourth Amendment rights when he measurably extended the traffic stop after the mission for the stop had already been completed when he did not have reasonable suspicion to extend the stop. Now, the parties agreed in this matter... Excuse me, I'm sorry to interrupt. The parties agreed that the initial traffic stop was permissible because Trooper Weiss blocked the vehicle going five miles per hour over the speed limit. And he approached the vehicle on the passenger side, requested their information, took it back to his vehicle, and began running their information. After a few minutes, he then called Ibrahim to come back and sit in his squad car and asked him some questions as he continued to fill out the paperwork. Now, approximately 12 minutes into the stop, he had completed finishing the work. But instead of having Ibrahim sign it, hand it to him and say, be on your way, drive safe, he left Ibrahim in the car, then went up to the vehicle and spoke to Majed for approximately three minutes and asked him a bunch of additional questions. After he spoke to Majed, he decided he needed to call the K-9. That's when he got on the radio and asked the K-9 unit to come to his location. And then, essentially, asked more questions, both kind of waited for the K-9 to get there, and then the K-9 did the sniff, and it alerted, they searched the vehicle, and they found the cigarettes in the trunk. The problem is, when Trooper Weiss finished writing the warning for Ibrahim, that should have been it. The stop was over, he should have handed him the warning ticket and said, be on your way, and that was it. In order to extend the stop beyond that point, he would have needed reasonable suspicion that they were engaging criminal activity. He did not have that based on the record in this case. So it's your position that that time that he took to return the rental paperwork to the passenger was not, should not be considered part of the stop, completing the stop. The few seconds of walking to the vehicle and returning the items and paperwork? Yes. That's probably permissible because he had to return the items, but the additional questioning for several minutes afterwards, that certainly is not permissible regarding the stop of Ibrahim for speeding. Now, at the suppression hearing, Trooper Weiss testified that his suspicion, he believed there was reasonable suspicion based on three things, essentially. One was that the car stopped in the lane of traffic and not on the shoulder. Two, that they answered the questions in a halting manner and didn't give him exact answers, and that they appeared nervous based on a variety of observations. These things, however, did not amount to reasonable suspicion of criminal activity. Now, the car stopping in the right lane of traffic is certainly unusual, but is not indicative of criminal activity. Perhaps it shows someone is confused or doesn't understand or maybe even nervous, but that in itself is not criminal. To you or I, the officer said that hasn't happened very often in his experience, and the few times that it has, it always wound up leading to there being something criminal. So don't we look at it from his perspective at that point in time? Whether it's reasonable to him, not reasonable to us. Well, but it has to be taken in context of all the things. Just saying that the mere fact that the car stops improperly doesn't necessarily indicate that those people are indicative of criminal activity. To you or I. Or even to a police officer. That in itself is not indicative of criminal activity. He said that's been an issue before with him. In those few instances where that has happened, there's a one-to-one correlation. Every time this has happened, it has resulted in there being a criminal issue. Isn't that true? An arrest. He said an arrest. Your Honor, he said an arrest. It did not explain a probable cause as opposed to reasonable suspicion, which is a lesser standard. He did not explain what those arrests were for, however. It's possible all of those people were visibly intoxicated. When he got up there, he could see that they were obviously under the influence. But again, now you're doing an ex post facto analysis. My question is, isn't the officer permitted to consider these things as they develop in front of him? Of course he's permitted to. He's permitted to consider this. I'm just saying, in the overall totality of the case, these things he identified did not rise to the level of reasonable suspicion. In addition to the car stopping, he mentioned that they were answering the questions in a halting manner. He did not answer his questions in great detail. Again, as was discussed in the acquittal defense case, Ibrahim obviously struggled with English. On the video, you can tell he's pausing, trying to come up with words. He apologized several times for not being comfortable with English. And so some of that is likely from the language barrier there. Some of the things that Schupper-Weiss attributed to him sort of stalling when giving answers or giving vague answers, those questions were responsive to his questions. They just may not have been as detailed as Schupper-Weiss wanted. Schupper-Weiss did not ask follow-up questions to delve into. For example, about the gas station, when they said, what did you do at a gas station for five hours? And he just kind of said, you know, he didn't ask him, there weren't the kind of follow-up questions to clarify, you did nothing there, or you sat there and watched, because as the record developed, they were going to see Majed's, I believe it was Majed's father's friend, who owned a business there. Majed's father owned a similar business in the Chicago area. So it sort of came that they were, it was a business like gas station owner, gas station owner business relationship, and that was the reason for their visit. So in that context, looking at it, the fact that they went to a gas station for four hours doesn't seem as suspicious, because it was gas station owners in a business relationship. And similarly, he talked a lot about the nervousness, what he perceived to be nervousness. He identified shaking hands, bouncing leg, his claimed ability to see their heart rate in their neck or in their belly, at night, from a distance. All of these things he described were at the very beginning of the stop. And anybody would be nervous when a police officer pulls them over, particularly people who are in this country for not a very long time. It was Ibrahim's first experience with police officers. And now... And again, he's supposed to know that at the time of the stop. Well, he quickly learned that in having this conversation. As soon as he started speaking with them, he could tell that Ibrahim had... He may be from a different country, but that's all he knows. And that he had issues with language and other things like that. He doesn't know that. In fact, I think he said he didn't have any problem understanding them. He didn't have any problems understanding them, but at the same time, he described his speaking as halting and pause. On the video, it's to another point. Let's say that the real reason for their halting behavior is an inability to understand or speak well in English. Does the officer have to know that? And let's say that even though he may be wrong in what his suspicion is, don't we still look at whether it's reasonable to him at the time and not what we're looking at backwards in time? That's certainly a part of the analysis. I'm not saying these observations must be thrown out wholesale that he could not rely on them. Reasonable suspicions can be reasonable even if they're wrong. Yes. In some cases, yes. The fact that he may learn days later, weeks later, obviously, yes, that could impact. Yes. But based on what he saw at the time, he focused mostly on nervousness. And as we got into in the briefs, the mere fact that a person is nervous does not automatically mean there's criminal activity going on. It could be a factor, but the officer seemed to equate the fact that these people were nervous with his belief that they're engaged in criminal activity. And that belief, we don't necessarily have to give deference to the officer. We can give deference that he observed various things. He perceived them to be nervous. But those observations of nervousness do not necessarily rise to reasonable doubt of criminal activity. And the same thing with the trial court's findings of fact. The court relied on that there was nervousness that pervaded throughout the stop and perhaps even increased according to the trial court. And Trooper Weiss, he said the same thing. I gave him a warning, but he was still nervous. But he also brought one of them back to his squad car. He separated them. That would mean that he was not nervous. That would increase someone's nervousness. If it was just a warning, why are you making me sit in a police car? That had to be pretty troublesome to Abraham. Especially someone who had never interacted with police officers. If this was merely a warning, why did he need to separate him from his cousin and call for backup? Trooper Weiss kept doing these things that made Abraham more nervous. And yet, faulted Abraham for being nervous in response to these things. In sum, the observations that the officer made do not amount to reasonable suspicion. Just because, as we point out, there are explanations for each of the things he identified that could be non-criminal. But is that the standard? Do we look at, is there some other explanation for this? Is that how we're supposed to look at it? No, I understand that you're not required to look for other explanations. I'm simply pointing out that the officer immediately looked at each one of these things and assumed criminality. That may not be the most reasonable explanation of each of these things. When looking at these things, it still must be a reasonable officer's judgment. It seemed in this case that, from get-go, when Trooper Weiss saw the vehicle stop in the right lane, something in his head said, something's up here. And so everything after that, he viewed with that sort of, the colored glasses of, something's going on here, I've got to figure out what's going on. And so he sees all these things and immediately... Is there something wrong with that? There's not necessarily anything wrong with that, but... He can do that as long as he doesn't extend the stop, and as long as by the time he does extend it, he has reasonable suspicion. Sure, and obviously it's his job to investigate criminal activity, and investigate criminal activity, but the totality of the circumstances must be a reasonable police officer, based on their observations, gives Weiss reasonable suspicion at the time he extends the stop. If an officer assumes every person he pulls over is a criminal, and sort of takes everything that happens as indicative of criminality, that may not be reasonable for the officer to do so. And under the circumstances of this case, we believe that at the time Trooper Weiss extended the stop beyond when he had completed the warning, he did not have reasonable suspicion to do so. Thank you, counsel. Good afternoon, Assistant Attorney General Kay Van Dorsch on behalf of the people. Again, parties agree. The stop was supported by probable cause. He's speeding, he's traveling 75 in his 70s. And the fact that the officer completed the ticket did not mean, or the warning citation did not mean, as the defendant appears to think, that he had to hand it to him and let him go on his way. Therefore, by that time, by the 12-minute mark, he had learned information that amounted to a reasonable and articulable suspicion that there was some kind of criminality afoot. And here, in his mind, obviously, it was some kind of drugs in the trunk of the car, as you can see inside the car. What about the argument that it shouldn't take you 12 minutes to write out a warning? Pardon me? What about the argument that it shouldn't take you 12 minutes to write out a warning ticket? I'm sorry, I still can't hear you. You said at the 12-minute mark, right? Yes. Is it reasonable for him to have taken 12 minutes to write out a warning ticket? There's no dispute about that. That's correct. The parties don't dispute that that was a reasonable amount of time for him to write out the warning. That's very true. And he testified that that was the normal amount of time that he thought it typically took, between 10 and 12 minutes. So the parties don't dispute that. What I'm saying is that just because he finished writing it, didn't mean he had to give it to him and let him go on his way, because during the 12 minutes, he developed a reasonable suspicion to warrant a Terry staff, an investigative detention, to investigate. He had 11 years of experience as a trooper. He's allowed to rely on that experience and to view the circumstances through that lens. He explained again that the defendant stopped in the right-hand lane of travel. He didn't pull over until he was asked twice to pull over. I want to make sure the Court's aware, it's not that he just came over last week. Both defendants have Illinois driver's licenses, so it was true that he saw that he could reasonably consider that these are licensed Illinois drivers, who should probably know something about the rules of the road. They've passed the test. The concept of a traffic stop should not be wholly foreign to a licensed Illinois driver. Both of them were nervous, extremely nervous. The bouncing of the leg on Magic's part, the advanced heart rates, the high heart rates, the twitching eyes. As to the halting explanation, it wasn't so much that they were halting, it wasn't that they were halting and he said that because he couldn't understand them. He said the halting nature of the explanation made him feel, him sounded like he was making up the story on the spot. And that, to him, was another factor that went into the totality of the circumstances, providing, in his mind, reasonable suspicion of criminal activity. Once they get back in the car again, he was told at the car initially, right away, when he got the license and the documents, he said, just going to write you a quick warning and you'll be on your way. He calls Abraham back to the car. He reminds him again that he's just getting a warning. And I believe it happened once or maybe twice more that he heard he was just getting a warning. No money, no ticket, no cost, just getting a warning. But again, as Trooper Weiss testified, his experience over these 11 years, all he does is write these tickets on the side of the road. And his experience, an average driver, calms way down. Even if they've initially been nervous and displayed a lot of nervousness, they calm way down and relax a little bit once they realize that it's just going to be a warning and not a ticket. No points on their license, no cost. And when he asked him about his itinerary again, Trooper Weiss said he didn't have any trouble understanding these people. It's not an understanding problem. They made themselves understood, although I will agree that Abraham's English wasn't perfect, but he was able to make himself understood. But when he asked him about his itinerary, he said they were somewhere in Missouri. He can't say where. He said no city, Missouri. So he knows he's in Missouri. He doesn't know where. He thinks they got there at 4 or 5. That's reasonable, but they stayed 5 or 4 or 3 hours. Where were they the whole time? A gas station. They just stayed at a gas station. So from Trooper Weiss' point of view, when you add up all this totality of the circumstances, it amounts to reasonable suspicion to detain them briefly under Terry. It's important to remember, too, I don't have the minute mark around here, but after Magid was removed from the rental car and he went back into the Trooper Chapman's car, then Trooper Weiss went back to the squad car and he gave him the warning. He finally gave him the warning after about 4 minutes of questioning Magid. He gave him the warning and said, do you mind if I ask you a few more questions? And he answered questions voluntarily, but then he also defended here. Ibrahim agreed to wait for the police dog to arrive. He said, call the police dog. It's okay if we wait for the dog's death. Any delay, any prolonging from that point is reasonable because consent is going to defeat the Fourth Amendment claim at any point after that. I don't think I have anything else. I don't see anything. Any rebuttal, counsel? Regarding Trooper Weiss' observations that Ibrahim seemed nervous throughout the whole stop and was very nervous, the video simply doesn't reflect that. When he turns on the camera that shows the internal view of Ibrahim sitting in the seat, he's kind of slouched back with his hand behind his head. He's smiling. He's answering his questions. He's not jittering. He's not darting his eyes around. He seemed very calm. In fact, at one point, both Trooper Weiss and Ibrahim pull out smokeless tobacco and talk about the different brands that they use and both put smokeless tobacco in. It seemed like a pretty calm, casual encounter as they were sitting there. In terms of something that shows what Trooper Weiss was thinking throughout this, he testified at the motion to suppress that he did not give the warning to Ibrahim when he finished it because he wanted to go speak to Majed some more before he let them go. That shows that in his head he had already decided he was going to continue investigating other crimes beyond the traffic stop at that point, but he did not yet have reasonable suspicion. Even his own statements about the conflicting travel plans, he didn't get those until after he went and spoke to Majed. Finally, in response to counsel's argument regarding this being a consensual encounter, all of that happened well after the stop was prolonged beyond writing the warning. That's the point in time that matters here. Everything that happened after that is not relevant. Also, it simply was not a consensual encounter. Trooper Weiss testified that Ibrahim was not free to leave at that point even though he said drive safe. He wasn't going to let them just walk away. He had already called the K-9. Besides, Majed was in Trooper Chapman's car. Ibrahim couldn't have left without his cousin who was secured in the other officer's vehicle at that time. It simply was not... He agreed to wait and that nature. If there are no further questions, Your Honors, we ask that you reverse the Circuit Court's denial of the motion to suppress. Thank you. We'll take this matter under advisement and be in recess.